

*Nancy V. Alquist*
NANCY V. ALQUIST
U. S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Greenbelt Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| **ELLA SHELTON,** | * | Case No. 04-11677-NVA |
| | | Chapter 7 |
| Debtor. | * | |
| * * * * * * | * * * * * * * | |
| **SCOTT D. FIELD,** | * | |
| Plaintiff, | * | |
| v. | * | Adv. Proc. No. 04-02031-NVA |
| **BENJAMIN L. BRYANT,** | * | |
| Defendant. | * | |
| * * * * * * * | * * * * * * | |

**MEMORANDUM OF DECISION WITH RESPECT TO**
**TRUSTEE'S COMPLAINT TO SELL INTEREST IN REAL**
<u>**PROPERTY OF DEBTOR AND CO-OWNER**</u>

This is an adversary proceeding by Scott Field, chapter 7 trustee in the above-captioned case (the "Trustee") seeking relief under § 363(h) of the Bankruptcy Code. The Court has

subject matter jurisdiction over the proceeding pursuant to 28 U.S.C. § 1334(c).  This is a core proceeding in which the Court may enter a final judgment pursuant to 28 U.S.C. § 157(b)(2)(O).  The following constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

Pursuant to § 363(h), a bankruptcy trustee can be authorized, upon proving certain elements to sell both the interest of the debtor and a co-owner in property, with the respective interests to attach to proceeds.  Here, there is no dispute that the Trustee is entitled to sell.  The only dispute is as to the allocation of net proceeds of such a sale pursuant to § 363(j), which provides:

> After a sale of property to which subsection (g) or (h) of this section applies, the trustee shall distribute to the debtor's spouse or the co-owner of such property, as the case may be, and to the estate, the proceeds of such sale, less the costs and expenses, not including any compensation of the trustee, of such sale, according to the interests of such spouse or co-owners, and of the estate.

Notably, the Trustee's rights under § 363(j) are derivative of the Debtor and, hence, no better than hers under applicable Maryland law.  *See In re Ford*, 3 B.R.559 (Bankr. D. Md.1980), *aff'd*, 628 F.2d 14 (4th Cir. 1981); *accord Butner v. United States (In re Golden Enterprises, Inc.)*, 440 U.S. 48, 55 (1979) (Act case).

To state the dispute simply, the Trustee seeks half the net sale proceeds.  The co-owner, however, claims entitlement to more than half, on the ground that he alone paid the mortgage on the Property for most of the three years preceding the Debtor's filing of her bankruptcy petition.

### GOVERNING LAW

There is a presumption under Maryland law that joint tenants are entitled to equal shares. *Carozza v. Murray*, 663 Md. App. 496, 492 A.2d 1349, 1351 (1985).  The presumption of equal ownership may be rebutted, however, under certain circumstances.  *Mueller v. Fidelity-Baltimore Nat'l Bank*, 226 Md. 629, 174 A.2d 789, (1961) (*citing Jezo v.Jezo*, 23 Wis. 2d 399,

127 N.W.2d 246 (1964)).  The burden of proof is on the party opposing the presumption and the standard of proof is by preponderance of evidence.  *Carozza*, 492 A.2d at 1351.  The presumption may be rebutted by evidence showing the source of the actual cash outlay at the time of acquisition, an intent of the co-tenant creating the joint tenancy to make a gift of the half-interest to the other co-tenant, unequal contribution by way of money or services, and unequal expenditures in improving the property or freeing it from encumbrances.  *Jezo*, 127 N.W. 2d. at 250.

Thus, where property is jointly owned, a co-tenant who makes payments to preserve the property is entitled to contribution from his co-tenants.  *Manns v. Manns*, 308 Md. 347, 519 A.2d 740, 743 (1987); *Crawford v. Crawford*, 293 Md. 307, 443 A.2d 599, 600 (1982).  Contribution may be accomplished in either of two ways.  The court may direct that the entire amount of the advance be deducted from the net sale proceeds and paid to the paying co-tenant before dividing the balance between the co-tenants; or the court may divide the net proceeds between the paying co-tenant and the non-paying co-tenant and then deduct half of the advance from the share of the non-paying co-tenant and augment the paying co-tenant's share by the amount of the deduction.  *Kamin-A-Kalaw v. Dulic*, 322 Md. 49, 585 A.2d 216 (1991).

The Trustee acknowledges the doctrine of contribution, but argues it is overcome in this instance by one of three theories.  First, the Trustee argues there was an agreement between the parties which, in effect, waived the right of contribution.  Second, he argues that co-tenant is estopped from asserting the right of contribution, since he only did so after the relationship between the parties had terminated on unfriendly terms.  *Cf. Mona Elec. Co. v. Shelton*, 377 Md 320, 334, 833 A.2d 527 (2003) (estoppel generally).  Third, the Trustee argues the mortgage payments, at the time made, were intended as gifts.  *In re Haller*, 228 Md. 505, 180 A.2d 689, 510 (1962).  Notably, on each of these theories, the Trustee bears the burden of proof.

## FACTS

Ella Shelton (the "Debtor") and Mr. Benjamin Bryant ("Mr. Bryant") had an intimate relationship for about twenty years and lived together most of that time, though not legally married. In March 1999, they purchased as joint tenants a property known as 6817 Westchester Court, Camp Springs, Maryland 20748 (the "Property"). The Trustee estimated the current value of the Property, which is subject to a mortgage. For purposes of this Memorandum, the Court shall use the term "Net Sale Proceeds" to mean the actual net sale proceeds as realized when the Property is sold.

*Stipulated facts*. The following facts are stipulated by the parties. When the Property was purchased, the Debtor alone advanced the down payment and closing costs, in an aggregate amount of approximately $6,400.00. From the date of purchase through September 2001, the Debtor and Mr. Bryant contributed equally to the mortgage payment and household expenses. In October 2001 – in part because the Debtor suffered a substantial reduction in income, and in part because Mr. Bryant had been called up to active duty in the armed forces in the aftermath of September 11th – Mr. Bryant commenced making all mortgage payments, while the Debtor assumed all household expenses. This arrangement continued through June 2004, one month after his return from active duty (in May). Throughout this period, except for a four month period commencing in November 2002, Mr. Bryant was away from home full time, most of it in Afghanistan. In July 2004, i.e., less than two months after his return, Mr. Bryant moved out of the Property and the Debtor commenced making the mortgage payments, as well as continuing to pay household expenses. The aggregate amount of mortgage payments by Mr. Bryant from October 2001 to June 2004 was $38,110.51. The aggregate amount of mortgage payments by the Debtor from August 2004 to February 2005 was $12,159.00.

*Disputed facts*. Several facts are in dispute. The Court identifies here only those disputed facts which are material to its decision.

      (i) Whether Mr. Bryant and the Debtor intended the above-mentioned arrangement commencing in October 2001 to be a *quid pro quo*, i.e., an oral contract with respect to payment of the mortgage and expenses, with no expectation of future repayment or adjustment between them.

      (ii) Whether Mr. Bryant's undertaking to pay the mortgage was understood by the parties to be a long term or a short term arrangement.

      (iii) Whether Mr. Bryant intended his making of the entire mortgage payment as a gift to the Debtor.

      (iv) Whether certain expenditures by the Debtor for repairs were beneficial to the Property and the amount of those expenditures.

*The Court's findings*. The Court conducted the trial in this proceeding on March 1, 2005, at which various exhibits were submitted into evidence and both the Debtor and Mr. Bryant testified. Based on the exhibits, and after observing and assessing the credibility of the witnesses, the Court finds as follows:

      (i) The Debtor and Mr. Bryant had no agreement one way or the other with respect to repayment or adjustment of the payments being made by each. Rather, it is clear to the Court that the arrangement was borne almost entirely of exigency due to Mr. Bryant's deployment.

      (ii) Although the evidence was not entirely clear – indeed, the Court thinks the parties' intentions at the time were not clear – the arrangement seems originally to have been intended as a short term one. The Debtor testified, for example, that she had hoped to find

increased income more quickly, but had been unable to do so. Meanwhile, Mr. Bryant testified that he had not anticipated his deployment would last so long. Once put in place, though, the arrangement continued in part through inertia and in part because (insofar as Mr. Bryant could see, at least) there was no practical alternative.

(iii) The Court credits Mr. Bryant's testimony that he was making the payments for two reasons: it was an obligation, and he wanted to have a home to which to return after his deployment. Plainly the payments benefited the Debtor in the sense of giving her a place to live without paying rent. And doubtless the fact that Mr. Bryant and the Debtor were in a personal relationship was why he neither requested nor expected payment of rent. This perhaps, could be considered a gift, but the benefit of rent-free possession has already been enjoyed and is not in dispute in this proceeding. As regards the mortgage payments themselves, however, the Court finds that Mr. Bryant had no donative intent.

(iv) There was conflicting testimony about the value of repairs made to the Property by the Debtor during the period in issue. Ultimately, the Court finds that she probably made repairs reimbursable in the present context (contribution between co-tenants) in the amount of $2,500.00.

### CONCLUSIONS OF LAW

As noted, the presumption under Maryland law is that joint tenants share sale proceeds equally. The Court concludes, however, that Mr. Bryant has met his burden of proving an entitlement to contribution in the amount of $19,055.26, i.e., half the mortgage payments from September 2001 to June 2004. The Court has carefully considered the Trustee's three theories in rebuttal of the contribution claim and concludes he has not met his burden of proof. For reasons discussed above, the contract and gift theories founder on the facts. As regards estoppel, the

Trustee has made no showing of detrimental reliance, i.e., of how the Debtor was led to change her position for the worse.  By paying the electric bill and other household expenses while living in the Property rent-free?  In the Court's view, that does not make out an equitable estoppel.

      On the other hand, the Court does agree that the Trustee has demonstrated a right of contribution with respect to certain items.  Plainly the $6,400.00 advanced by the Debtor when the Property was purchased is eligible for contribution; likewise the $2,500.00 in repairs mentioned in the Court's findings of fact.  The Court rejects, however, the proposition that household expenses are entitled to contribution.  Under the cases cited above, contribution is available only for costs of improving or preserving the Property, not ordinary operating expenses.  Further, the payments were of no benefit to Mr. Bryant, since he was overseas at the time.  More subtle is the issue of contribution in respect of the mortgage payments made by the Debtor starting July 2004.  These payments have conferred some benefit on Mr. Bryant, but not to the extent of half.  After all, the Debtor is enjoying exclusive possession of the Property, for herself and her family and her friends.  Indeed, the Court credits Mr. Bryant's testimony that he came home to a hostile environment, found most of the house closed off to him and was forced to sleep on the floor.  Under the circumstances, contribution to the extent of 25% of the Debtor's payments, i.e., an adjustment of $3,040.00, is generous.  Thus, the total contribution adjustment in favor of the Trustee would be $7,490 (half of the down payment, half of the repairs and 25% of the mortgage payments).

      Netting the two contribution amounts against each other produces a net adjustment in Net Sale Proceeds in favor of Mr. Bryant of $11,565.26.  Thus, for example, if the Net Sale Proceeds are $100,000, Mr. Bryant would get $61,565.26 and the Debtor's bankruptcy estate would get $38,434.74.

The Court will enter an Order contemporaneously with this Memorandum.

cc: Trustee's counsel
     Defendant's counsel
     Debtor
     U.S. Trustee